UNITED STATES DISTRICT COURT
                    EASTERN DIVISION OF KENTUCKY
                    **CENTRAL DIVISION at LEXINGTON**


| | | |
|---|---|---|
| C&M GIANT TIRE, LLC, | ) | Civil Case No. |
| | ) | 5:13-cv-162-JMH |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| TRIPLE S TIRE CO., INC., | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

                              ***

This matter is before the Court upon Plaintiff's renewed motion for summary judgment. [DE 43]. Defendant has responded, [DE 46], and Plaintiff has filed a reply, [DE 47]. The Court has considered the motion and, for the following reasons, will grant Plaintiff's motion for summary judgment.

**I.   Background**

C&M Giant Tire, ("C&M") and Triple S Tire Company ("Triple S") are both merchants engaged in the business of buying and selling large industrial tires. In January 2013, C&M and Triple S entered into an agreement whereby C&M would sell Triple S thirty-two industrial tires at a total cost of $854,900. Triple S accepted delivery of the thirty-two tires on or about January 11, 2013. Contemporaneously with purchasing them, Triple S sold the tires to a Texas entity called V&V OTR Tyre Worldwide

("V&V"), which took possession of the tires but allegedly still has not made complete payment to Triple S.[1] Triple S does not dispute that it has paid C&M only $162,000 of the original $854,900 purchase price. C&M seeks to recover the unpaid balance.

The parties disagree on very little, save one important detail—the contractual payment term. C&M contends that when the parties formed the sales agreement, both agreed that Triple S would pay "net 30"—meaning that payment would be due thirty days from the date of invoice. Triple S argues, however, that the parties entered into an oral agreement wherein Triple S would "pay when paid" from its reselling of the tires to V&V. Because V&V still has not made payment for the tires, Triple S reasons, its payment to C&M is not due and, therefore, it has not breached its obligation to C&M.

The only writings exchanged by the parties were a few text messages between the parties' sales representatives and the invoices for the tires which were emailed from C&M to Triple S. On January 2, 2013, Terry Stanley, a Triple S sales representative, sent a text message to Doug Chambers of C&M, negotiating a price for the tires and asking Chambers to "give

---

[1] Triple S is currently involved in litigation in the Southern District of Texas in which it seeks a declaration of ownership and return of the tires at issue. *See TRC Tire Sales, LLC, et al v. Triple S Tire Co., Inc.*, 4:13-cv-1539.

[him] 30 days." On January 4, Stanley sent another text message to Chambers, asking him to send an invoice for the first 26 tires and to "date it for Monday." The first invoice was, indeed, issued on Monday, January 7, 2013, and describes the shipment of 26 "33.00R51 Goodyear RM4A+3SL" tires at a total cost of $692,900. Notably, under the heading "Terms," the invoice states, simply, "Net 30 Days." The second invoice is dated January 10, 2013, and describes the shipment of six additional tires at a total cost of $162,000. Again, the only term stated is "Net 30 Days." Triple S does not dispute that it received and had an opportunity to review the invoices.

Despite these writings, Triple S contends that during initial negotiations, the parties agreed that Triple S would not be required to pay C&M until it received payment from its sale of the tires to V&V. Had it not been for the inclusion of a "pay when paid" term, Triple S maintains, it would not have agreed to purchase the tires. While Triple S acknowledges the presence of the "net 30 days" term in the invoices it received from C&M, Triple S contends that it relied in good faith upon C&M's previous express oral representation that it would not be obligated to pay until it was paid by its buyer. Triple S's belief that the invoice terms did not control was bolstered by C&M's delivery tickets that contained yet a different payment

3

term—"net first 10th." Additionally, the parties had done business together in the past and, according to Triple S, it believed that C&M would honor its promise, despite the written representations.

**II. Standard of Review**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court resolves all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The pivotal inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 at 251-52. When the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (quotation marks and citation omitted).

**III. Discussion**

    **a. Prior Oral Agreement Regarding Payment Term**

Because the agreement at issue is for the sale of goods, this transaction is governed by the Uniform Commercial Code, as adopted in KRS Chapter 355. *A&A Mech., Inc. v. Thermal Equip. Sales, Inc.,* 998 S.W.2d 505, 509 (Ky. Ct. App. 1999). Kentucky's parol evidence rule provides that

> terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement.

KRS § 355.2-202. Defendant contends that the invoices it received from C&M on January 7th and 10th were not intended as a final expression of the parties' agreement and, thus, the Court should consider prior discussions regarding the conflicting "pay when paid" term. As Defendant points out, the invoices do not contain an integration clause, which lends some credence to the argument that parol evidence may be admissible. *See Kovacs v. Freeman,* 957 S.W.2d 251, 257 (Ky. 1997). Even without an express integration clause, however, the Court is persuaded that the invoices represented the final expression of the parties' agreement. The invoices contained all essential terms of the bargain: description and quantity of the tires; price; place of

delivery; and terms of payment. *See A&A Mech., Inc.*, 998 S.W.2d at 509. Defendants have failed to identify any factors suggesting that there were terms left unsettled or that the invoices represented anything other than the parties' final agreement. After receiving the invoices, Triple S accepted the tires and failed to object to the terms of the invoices in any discernable way.

The Court is likewise unpersuaded by Triple S's alleged reliance on the "net first 10th" language of the delivery slips. Doug Chambers testified in his deposition that "net first 10th" means that payment is due the first 10th of the month after a delivery. Clearly, Triple S has complied with neither a net-30 nor a net first 10th term of payment. That the invoices constituted the final expression of the parties' agreement with respect to the tires is the only logical conclusion. Despite Defendant's protestations, a delivery slip with a single varying term does not change this. As such, in accordance with KRS § 355.2-202, evidence of a prior oral "pay when paid" term is inadmissible and will not be considered.

Absent an ambiguity, "a written instrument will be enforced strictly according to its terms." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003). The parties agree that "net 30" is a standard term which means that payment is due within thirty

6

days from the date of invoice. Defendant does not dispute that this date has long passed and it has failed to make complete payment to Plaintiff. Accordingly, Defendant is in clear breach of the parties' agreement and there is no issue to be submitted to a jury.

    **b.    Prejudgment and Post-Judgment Interest**

Plaintiff has requested in its proposed order both prejudgment interest from February 9, 2013 through the date of entry of judgment and post-judgment interest from the date of entry of judgment until satisfied. When determining the applicability of prejudgment interest, a federal court sitting in diversity must apply the law of the forum state. *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266, 270 (6th Cir. 1985) (citations omitted). Kentucky law requires a court to award prejudgment interest when the damages are liquidated. *Nucor Corp. v. Gen. Elec. Co.*, 812 S.W.2d 136, 141 (Ky. 1991). Liquidated damages are those that can be determined by simple calculation, with reasonable certainty, pursuant to fixed rules, or by reference to well-established market values. *3D Enters. Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 450 (Ky. 2005). The amount due under the parties' contract is clear and not at dispute here. Accordingly, this Court must award prejudgment interest at 8%,

which is the maximum rate allowable under Kentucky law. *See Pursley v. Pursley,* 144 S.W.3d 820, 829 n.40 (Ky. 2004); KRS § 360.010(1). Federal law mandates post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). As Plaintiff's damages all result from an unpaid fixed contract price, they are liquidated damages under Kentucky law and the Court will award appropriate prejudgment and post-judgment interest for all damages awarded.

Accordingly, **IT IS HEREBY ORDERED**:

1) that Plaintiff's motion for summary judgment, [DE 43], is **GRANTED.** A separate order of judgment will issue.

This the 10th day of November, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge